FILED

2018 May-14  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

AMBER TURNER, STEPHANIE )
COLEMAN, BREEANA MILLER, )
and ASHLEY WILLIAMS, on )
behalf of themselves and all others )
similarly situated, )
          )
        Plaintiffs, )
          )
v. )     Case No. 2:16-cv-01455-JEO
          )
VGC, INCORPORATED, d/b/a )
VISIONS GENTLEMEN'S CLUB )
and GBC, INC., d/b/a SHOWCASE )
GENTLEMEN'S CLUB, )
          )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

This is a putative collective action brought by plaintiffs Amber Turner,

Stephanie Coleman, Breeana Miller, and Ashley Williams (collectively,

"Plaintiffs") against the owners and operators of two nightclubs in Madison

County, Alabama: VGC, Incorporated ("VGC"), d/b/a Visions Gentlemen's Club

("Visions"), and GBC, Incorporated ("GBC"), d/b/a Showcase Gentlemen's Club

("Showcase").  Plaintiffs allege that they worked as exotic dancers at Visions

and/or Showcase and that VGC and GBC violated the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 et seq., by misclassifying them (and other members of

the putative class) as independent contractors rather than employees and failing to pay them the statutory minimum wage.

The case is now before the court on three motions: (1) Plaintiffs' amended motion for conditional certification of the case as a collective action (doc. 54); (2) VGC's motion for summary judgment (doc. 63); and (3) Plaintiffs' motion to strike two affidavits that VGC submitted in support of its summary judgment motion (doc. 69).  Because VGC's motion for summary judgment raises the threshold issue of whether Plaintiffs can establish coverage under the FLSA even assuming that they were "employees" of VGC, the court will first consider VGC's summary judgment motion and Plaintiffs' motion to strike, and will then address Plaintiffs' amended motion for conditional certification.  For the reasons that follow, VGC's motion for summary judgment will be denied, Plaintiffs' motion to strike the affidavits will be denied, and Plaintiffs' amended motion for conditional certification will be granted in part.

## I. VGC'S MOTION FOR SUMMARY JUDGMENT

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court views the evidence in the light most favorable to the non-movant. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). The court must credit the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor. *Id.* Inferences in favor of the non-movant are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied). At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**B.    Facts[1]**

VGC operated the nightclub known as Visions until June 3, 2017, when it ceased operations.  Lee Faulkner was the Manager of VGC from 2013 through 2017. (Doc. 76-1 at ¶¶ 2-3).  GBC operated the nightclub known as Showcase until it ceased operations in 2015. (Doc. 72 at 1 & ¶ 12).

Plaintiffs Stephanie Coleman, Breeana Miller, and Amber Turner all worked as exotic dancers at Visions and Showcase.  Coleman worked at Showcase from 2005 until it closed in October 2015.  She also worked "a few shifts" at Visions during that same period. (Doc. 74-4 at ¶ 1).  Miller "primarily" worked at Visions for four months starting in January 2014, but she "also worked shifts" at Showcase. (Doc. 74-10 at ¶ 1).  Turner worked at Visions at "various times" from 2013 to 2016.  She also worked at Showcase from 2013 until it closed in October 2015.

---

[1] The following facts are taken primarily from the various affidavits and declarations the parties have submitted in support of and in opposition to the motion for summary judgment, including: the Affidavit of Lee Faulkner dated February 8, 2018 (doc. 65-1); the Affidavit of Lee Faulkner dated March 20, 2018 (doc. 76-1); the Affidavit of Carolyn Bracken dated February 7, 2018 (doc. 65-2); the Declaration of Jane Doe 3 (Stephanie Coleman) dated March 28, 2017 (doc. 74-1); the Declaration of Stephanie Coleman dated November 8, 2017 (doc. 74-9); the Declaration of Stephanie Coleman dated March 8, 2018 (doc. 74-4); the Declaration of Jane Doe 4 (Breeana Miller) dated March 8, 2017 (doc. 74-2); the Declaration of Breeana Miller dated November 3, 2017 (doc. 74-10); the Declaration of Breeana Miller dated February 28, 2018 (doc. 74-5); the Declaration of Jane Doe 1 (Amber Turner) dated March 17, 2017 (doc. 74-3); the Declaration of Amber Turner dated March 7, 2018 (doc. 74-6); and the undated Declaration of Amber Turner (doc. 74-11).

4

(Doc. 74-6 at ¶ 1).  Plaintiff Ashley Williams worked only at Showcase, from March 2015 until October 2015.[2]

Visions and Showcase were open six days a week. Visions was open from Monday through Saturday, and Showcase was open from Tuesday through Sunday. (Doc. 74-4 at ¶ 2).  Coleman, Miller, and Turner all worked the night shift, which ran from 6:00 p.m. to 2:00 a.m.  (Doc. 74-1 at ¶ 3; Doc. 74-2 at ¶ 3; Doc. 74-3 at ¶ 3).  They contend that they never worked a night shift with fewer than eight dancers working and never worked a weekend night shift with fewer than twenty dancers working. (Doc. 74-4 at ¶ 3; Doc. 74-5 at ¶ 3; Doc. 75-6 at ¶ 3).

According to Coleman, Miller, and Turner, Visions would not schedule them to work unless they were available to work at least four days in a week.  Friday and Saturday nights were mandatory.  They were required to stay and work for the entire length of their shift and would be fined if they left early. (Doc. 74-1 at ¶¶ 4-5; Doc. 74-2 at ¶¶ 4-5; Doc. 74-3 at ¶¶ 4-5).

Coleman, Miller, and Turner have all testified that they had to pay Visions a $25.00 "tip out" for each shift they worked. (Doc. 74-1 at ¶ 7; Doc. 74-2 at ¶ 7; Doc 74-3 at ¶ 7).  They assert that each dancer was required to pay the $25.00 tip out and that the dancers were "never excused from their tip outs." (Doc. 74-4 at ¶ 4; Doc. 74-5 at ¶ 4; Doc. 74-6 at ¶ 4).  Faulkner agrees that dancers "sometimes"

---

[2] Unlike the other Plaintiffs, Williams has not submitted any declarations in this litigation.

paid tip outs to Visions, but contends that tip outs were not always required and were usually $10.00 or $15.00. (Doc. 76-1 at ¶¶ 10-11).

The dancers who performed at Visions and Showcase were required to have their dance music played by a disc jockey.  They were required to pay $15.00 to the disc jockey each night they performed. (Doc. 74-4 at ¶ 7; 74-5 at ¶ 7; Doc. 75-6 at ¶ 8).  According to Coleman, Miller, and Turner, the dancers would "request a song to be played by the disc jockey, who would then either live stream the song, or download it, and then play it[ ] on his computer, integrated with Visions'/Showcase's sound system, from the Internet through one of the readily available Internet streaming sites, like YouTube, LiveWire, or Sound Cloud." They contend that this was "standard practice" and that "almost all of the music" they danced to "was downloaded off of the Internet in this way." (Doc. 74-4 at ¶¶ 7-8; Doc. 74-5 at ¶¶ 7-8; Doc. 74-6 at ¶¶ 8-9).  Faulkner does not agree; according to Faulkner, "[t]he songs played at Visions were not streamed over the [I]nternet. Instead, the music was played from recordings on a computer hard drive. The songs had already been recorded on the computer's hard drive before the [dancer's] performance. … [Visions] did not use Internet streaming sites like YouTube, LiveWire, or Sound Cloud." (Doc. 76-1 at ¶ 7).

The dancers at Visions and Showcase earned money in two ways.  First, they earned tips while dancing on stage.  Second, they performed private dances for

6

customers at a rate of $25.00 per song, a rate set by Visions.  After the song ended and the customer paid the dancer, the dancer was required to remit $5.00 to the club. (Doc. 74-1 at ¶ 11; Doc. 74-2 at ¶ 11; Doc. 74-3 at ¶ 11).  According to Coleman and Miller, the dancers at Visions and Showcase would perform six private dances per shift "[a]t a bare minimum." (Doc. 74-4 at ¶ 6; Doc. 74-5 at ¶ 6).  According to Turner, "[m]ost dancers, at an absolute minimum, performed 6-8 [private] dances, and on a weekend, 15 dances." (Doc. 74-6 at ¶ 7).

VGC's general ledgers for the years 2013 through 2016 reflect that VGC had gross revenues of $380,748.94 in 2013; $388,015.11 in 2014; $339,499.58 in 2015; and $312,974.39 in 2016.[3] (Doc. 65-2 at ¶ 5 & pp. 4-63).  The revenues were comprised of "Beer Sales," "Door Cover Charges," "Miscellaneous Sales," "Machine Income," and "Other Income." (Doc. 65-2 at 4-63).  VGC's ledgers have no categories for revenues generated from exotic dancing, such as "tip outs" or private dance fees.  Faulkner, however, has testified that any tip outs paid by the dancers were reported and included as "door cover charges" and that the $5.00 fee

---

[3] A two-year statute of limitations generally applies to actions for violation of the FLSA's minimum wage requirements, unless the defendant's violations are shown to be willful, in which case a three-year limitations period applies. 29 U.S.C. § 255(a).  Here, VGC has expressly denied any willful violation of the FLSA, but for purposes of its motion for summary judgment has been willing to assume that a three-year statute of limitations applies. (Doc. 64 at 8).  The original complaint in this action was filed on September 2, 2016; therefore, assuming a three-year statute of limitations applies, the Plaintiffs could conceivably recover for the years 2013 through 2016.

the dancers paid to Visions each time they performed a private dance was also

reported as a "door cover charge[ ]." (Doc. 76-1 at ¶¶ 11-12).

## C.    Analysis

VGC argues in its motion for summary judgment that Plaintiffs cannot

establish coverage under the FLSA even assuming that their characterization of

themselves as "employees" is correct. (Doc. 64 at 6).  To establish a claim under

the FLSA, an employee must prove "one of two types of coverage, either: (1)

'individual coverage,' in which the employee was 'engaged in commerce or in the

production of goods for commerce,' or (2) 'enterprise coverage,' in which the

employee was 'employed in an enterprise engaged in commerce or in the

production of goods for commerce.'" *Martinez v. Jade Palace*, 414 F. App'x 243,

245 (11th Cir. 2011) (citing 29 U.S.C. §§ 206(a), 207(a)(1)).  Here, the court is

satisfied that Plaintiffs have made a sufficient showing of individual coverage to

defeat VGC's motion for summary judgment.

In order for Plaintiffs to qualify for individual coverage under the FLSA,

they must establish that they were "engaged in commerce" when they worked at

Visions.[4]  The Eleventh Circuit has explained:

> [F]or an employee to be "engaged in commerce" under the FLSA,
> [she] must be directly participating in the actual movement of persons
> or things in interstate commerce by (i) working for an instrumentality

---

[4] Plaintiffs have made no contention that they were engaged in "the production of goods for
commerce."

of interstate commerce, *e.g.,* transportation or communication industry
employees, or (ii) by regularly using the instrumentalities of interstate
commerce in [her] work, *e.g.,* regular and recurrent use of interstate
telephone, telegraph, mails, or travel. 29 C.F.R. § 776.23(d)(2)
(2005); 29 C.F.R. § 776.24 (2005).

*Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).

VGC argues that Plaintiffs cannot establish that they were engaged in commerce

because VGC was not in the business of communications or transportation and

Plaintiffs did not regularly use the instrumentalities of interstate commerce in their

work.  Plaintiffs do not dispute that VGC was not in the communications or

transportation business, but they do contend that they regularly used an

instrumentality of interstate commerce in their work—namely, the Internet.

Whether Plaintiffs used the Internet in their work is a disputed issue of

material fact.  Coleman, Miller, and Turner have all testified that the songs they

danced to at Visions were either streamed live or downloaded off of the Internet;

Faulkner has testified that the songs were not streamed over the Internet but instead

were prerecorded on a computer hard drive.  Neither side has offered any

testimony from any of the disc jockeys who played the songs, which might have

resolved the issue.  But for now the issue remains in dispute.

Assuming, for summary judgment purposes, that the dance music at Visions

was either streamed live or downloaded off of the Internet, Plaintiffs have provided

sufficient evidence of individual FLSA coverage to defeat VGC'S motion for

summary judgment.  Plaintiffs have offered testimony that (1) they were required to have their dance music played by a disc jockey hired by Visions; (2) they were required to pay the disc jockey each shift they worked; and (3) the disc jockey would live stream or download their requested dance songs off of the Internet. This constitutes the use of an "instrumentality of interstate commerce" such that individual coverage under the FLSA exists. *See United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("The internet is an instrumentality of interstate commerce.").

Other courts have found individual FLSA coverage to exist under similar circumstances.  For instance, in *Miller v. Centerfold Entm't Club, Inc.*, 2017 WL 3425887 (W.D. Ark. Aug. 8, 2017), the District Court for the Western District of Arkansas held that exotic dancers who performed to music streamed over the Internet qualified for individual coverage under the FLSA:

> Plaintiffs were required to regularly use the Internet to perform their dances. Individual coverage exists for dancers who "regularly use the instrumentalities of interstate commerce in [their] work." *Thorne v. All Restoration Servs.*, 448 F.3d 1264, 1266 (11th Cir. 2006). Furthermore, "[i]t is well-settled that '[t]he internet is an instrumentality of interstate commerce.' " *Foster v. Gold & Silver Private Club, Inc.*, 2015 WL 8489998, at *6 (W.D. Va. Dec. 9, 2015) (citing *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004)); *AvePoint Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496, 512 (W.D. Va. 2013). When Plaintiffs performed stage dances, they would request songs from the DJ who would often stream the music over the Internet via YouTube. Whether on stage or providing a private dance, dancers are hired by the Club to dance, and music is an indispensable part of a dancer's work. The music regularly streamed over the

10

> Internet while Plaintiffs performed at the Club, and their use of an
> instrumentality of interstate commerce is sufficient for individual
> coverage for each of the Plaintiffs in this action.

*Miller*, 2017 WL 3425887 at *3 (footnote omitted). *See also Wolfe v. SL Mgmt.*

*Servs. LLC*, 2016 WL 258810, *1 (E.D. Wis. 2016) (denying motion to dismiss

exotic dancers' FLSA claims for lack of individual coverage, where the dancers

alleged that they were "required to dance to music streamed over the Internet");

*Foster v. Gold & Silver Private Club, Inc.*, 2015 WL 8489998, *6 (W.D. Va. 2015)

(concluding that exotic dancers qualified for individual coverage under the FLSA,

where the dancers were "required to regularly use the Internet to perform the

dances that they [were] hired to perform"). The court agrees with this reasoning.

If Plaintiffs performed their dances to music streamed live or downloaded off of

the Internet—a disputed issue of material fact that will need to be decided by the

jury—then they qualified for individual coverage under the FLSA. Accordingly,

VGC's motion for summary judgment is due to be denied.[5]

---

[5] VGC also argues that Plaintiffs cannot establish "enterprise coverage" under the FLSA, which applies to enterprises engaged in interstate commerce "whose annual gross volume of sales made or business done is not less than $500,000 …." 29 U.S.C. § 203(s)(1)(A). VGC contends that its gross annual revenues, as recorded in its general ledgers for the years 2013 through 2016, were substantially less than the $500,000 threshold. Plaintiffs argue that VGC's general ledgers do not provide an accurate accounting of VGC's revenues because they do not include any revenues from exotic dancing. Plaintiffs also argue that VGC has ignored the revenues of GBC, which Plaintiffs contend was part of a "single enterprise" along with VGC. They argue that when all of the revenues from the single VGC/GBC enterprise are included, the enterprise's annual revenues easily exceeded $500,000. Because the court has determined that Plaintiffs have made a sufficient showing of individual coverage under the FLSA, the court need not reach the parties' arguments regarding enterprise coverage and pretermits any decision on that issue. The court does note, however, that it is questionable whether Plaintiffs have sufficient personal knowledge

## II. PLAINTIFFS' MOTION TO STRIKE

In support of its motion for summary judgment, VGC submitted two affidavits, one from Lee Faulkner, its former Manager (doc. 65-1), and one from Carolyn Bracken, its former accountant (doc. 65-2).  Plaintiffs have moved to strike both affidavits. (Doc. 69).  Their motion to strike focuses on statements made by Faulkner and Bracken in their respective affidavits that VGC did not have gross annual revenues of $500,000 or more during the years 2013 through 2016. (Doc. 65-1 at ¶¶ 7-8; Doc. 65-2 at ¶ 5).  Plaintiffs argue that these statements "could only be true if Visions, an exotic dance club, generated no revenue from exotic dancing." (Doc. 69 at 2).  Plaintiffs assert that this is "demonstrably false" and point to a prior affidavit executed by Faulkner (doc. 24-2) in which he stated that the dancers who performed at Visions "[paid] a rental fee for the use of the stage and for the benefit of performing on-site[.]"[6]  Plaintiffs thus argue that the affidavits submitted by Faulkner and Bracken in support of VGC's motion for summary judgment should be stricken as a sham, because they contradict Faulkner's prior affidavit testimony.

---

to testify to the revenues they contend VGC and GBC earned from exotic dancing during the relevant years.

[6] Faulkner's prior affidavit was submitted by VGC in support of its motion to require Plaintiffs, who filed this action anonymously, to litigate in their true names. (Doc. 24).  The court granted VGC's motion. (Doc. 42).

As discussed above, the court has determined that Plaintiffs have made a sufficient showing that they qualified for individual coverage under the FLSA to defeat VGC'S motion for summary judgment.  In making this determination, the court has not relied on any statements from Faulkner or Bracken that VGC did not have annual gross revenues of $500,000 or more, because that threshold requirement applies only to enterprise coverage. *See* 29 U.S.C. § 203(s)(1)(A). Accordingly, Plaintiffs' motion to strike is moot.

Even if the motion to strike were not moot, the court would still deny the motion. Under the "sham affidavit" rule, an affidavit may be disregarded as a sham "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact … [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) (quotation marks and citation omitted).  The Faulkner and Bracken affidavits do not fit within the parameters of this rule.  First, Bracken has not testified previously in this case.  Her affidavit does not and cannot contradict her prior testimony, because she has none.[7]  Second, Faulkner's prior affidavit testimony that dancers paid a rental fee to perform at Visions did not negate the existence of any genuine issue of material fact regarding the amount of

---

[7] The court also notes that there is no evidence that Bracken had any knowledge of Faulkner's prior affidavit testimony when she executed her affidavit.

VGC's annual gross revenues.  Indeed, Faulkner's earlier affidavit did not even touch on the issue of VGC's annual revenues.  Moreover, Faulkner and Bracken have based their present affidavit testimony on their review of VGC's general ledgers for the years 2013 through 2016, which Bracken attached to her affidavit. (Doc. 65-2 at 4-63).  Plaintiffs have not challenged the authenticity of those ledgers.  Therefore, even if the court were to strike Faulkner's and Bracken's affidavit testimony regarding VGC's annual gross revenues, the ledgers themselves would still be in the record.

### III. PLAINTIFFS' AMENDED MOTION<br>FOR CONDITIONAL CERTIFICATION

Having determined that VGC's motion for summary judgment is due to be denied, the court turns to Plaintiffs' amended motion for conditional certification of this case as a collective action.  Plaintiffs allege in their third amended complaint that VGC and GBC (collectively, "Defendants") violated the FLSA by misclassifying them and the other exotic dancers who worked at Visions and Showcase as independent contractors rather than employees and failing to pay them the statutory minimum wage. (Doc. 53).  Plaintiffs, who have brought this action on behalf of themselves and all others similarly situated, seek to represent a class of "[a]ll exotic dancers who worked at either Visions or the Showcase Club in Madison County, Alabama, at any time within three years of the filing of this action." (*Id.* at ¶ 77).  They have now moved the court to conditionally certify such

14

a class and to direct that notice be provided to all potential "opt-in" class members. (Doc. 54).  They have submitted a Proposed Notice to the purported class for the court's approval. (Doc. 55-11).  Defendants oppose Plaintiffs' motion and argue that Plaintiffs have not shown a reasonable basis to believe that there are potential opt-in class members who are similarly situated and wish to join this action. (Doc. 58).  Defendants also argue that Plaintiffs' Proposed Notice to potential class members is deficient. (*Id.*)

## A.    Conditional Class Certification Standard

In a recent opinion and order conditionally certifying a class of exotic dancers who worked at another nightclub in Alabama, District Judge Abdul Kallon set out the standard for conditionally certifying a collective action under the FLSA:

> Section 216(b) of the FLSA authorizes actions for unpaid overtime compensation against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Thus, to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are "similarly situated." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008).  Further, would-be plaintiffs in a § 216(b) collective action must affirmatively "opt in" to the suit. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  "That is, once a plaintiff files a complaint against an employer, any other similarly situated employees who want to join must affirmatively consent to be a party and file written consent with the court." *Morgan*, 551 F.3d at 1259.  The FLSA does not provide specific procedures by which potential plaintiffs may opt in, but the Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) ... by facilitating

notice to potential plaintiffs." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *see also Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983). …

The Eleventh Circuit has suggested a two-tiered process for district courts to manage collective actions. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001). At the first stage, called conditional certification or the "notice" stage, the district court makes a determination, based on the pleadings and affidavits on file, of whether it should authorize notice of the action to potential class members. *Id.* at 1218. Because the court has minimal evidence, the standard is lenient. *Id.* The district court must merely ascertain whether there are other employees who wish to opt in, and that they are similarly situated to the original plaintiff "with respect to their job requirements and with regard to their pay provisions." *Morgan*, 551 F.3d at 1259 (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). Indeed, this inquiry "typically results in 'conditional certification' of a representative class." *Hipp*, 252 F.3d at 1218. If the court conditionally certifies a class, court-supervised notice of the pendency of the action is then given to the potential class members, and they are afforded an opportunity to opt in to the action. *Id.*

The second stage of the process is activated by the defendant's filing of a decertification motion following the completion of discovery. *Id.* At this stage, based on a fully-developed record, the court makes a determination of whether the named plaintiffs and the opt-ins are similarly situated. *Id.* The plaintiff has a heavier burden to show similarity at the second stage. *Morgan*, 551 F.3d at 1261. If the court finds the plaintiffs are not similarly situated, it decertifies the action, dismisses the opt-in plaintiffs without prejudice, and the named plaintiffs proceed to trial on their individual overtime claims. *Hipp*, 252 F.3d at 1218. At all times, the decision to certify an opt-in class under section 216(b) "remains soundly within the discretion of the district court." *Id.* at 1219.

*Miller v. JAH, LLC*, Case No. 5:16-cv-01543-AKK, 2018 WL 305819, at

**1-2 (N.D. Ala. Jan. 5, 2018).

**B.**     **Analysis**

**1.**     **Conditional Class Certification**

"The key to starting the motors of a collective action is a showing that there is a similarly situated group of employees" who should be given notice of the pending action. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). Plaintiffs must demonstrate a "reasonable basis" for their contention that there are other similarly situated employees. *Id.* at 1260. Plaintiffs "may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'" *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996).

Here, Plaintiffs contend that they are similarly situated with the members of the putative class because they are all former exotic dancers who were subjected to the same policies and pay practices at Visions and Showcase. (Doc. 54 at ¶¶ 5-7). Specifically, Plaintiffs allege that Defendants required the dancers to report for work at specific times and stay for specific hours; fined the dancers if they left work early; required the dancers to pay a $25.00 "tip out" for each shift they worked; required the dancers to pay $15.00 to the disc jockey who played their dance songs; set the $25.00 price for a private dance and required the dancers to remit $5.00 each time they performed a private dance; reviewed the dancers'

wardrobes; and controlled when the dancers went on stage and how often. (*Id.* at ¶ 6). Plaintiffs have supported these allegations with declarations from Turner (doc. 55-4), Miller (doc. 55-5), Coleman (doc. 55-6), and Krystal McCray (doc. 55-7).[8]

Defendants have not submitted any declarations or affidavits challenging Plaintiffs' allegations. Nonetheless, Defendants argue that Plaintiffs have not met their burden of showing that there are other similarly situated class members. Defendants assert that "[e]mployment is a complex and a fact-intensive inquiry" and that "[t]he generic checklist repeated by each purported plaintiff neither goes into details nor discusses the complicated differences of employee versus independent contractor status, which has been recognized to vary greatly depending on the particular circumstances and requiring a case-by-case analysis." (Doc. 58 at 13 (footnote omitted)). Defendants argue that "unless there is an intensive investigation into the particular circumstances of each dancer and her experiences at Defendants' club[s], there is no way to determine, particularly preliminarily, that Plaintiffs are similarly situated to the rest of the purported conditional class." (*Id.* at 14). The court does not agree.

As Plaintiffs have observed, "If Defendants' argument that employment status is a complex and fact intensive inquiry not suited for collective action status

---

[8] McCray was one of the original plaintiffs who filed this action anonymously, but she dismissed her claims after the court ordered the plaintiffs to proceed in their true names. (Doc. 45). The Turner, Miller, and Coleman declarations were also submitted in opposition to VGC's motion for summary judgment. (*See* Docs. 74-1, 74-2, & 74-3).

were controlling, then no collective action challenging an employee's employment status would ever be certified." (Doc. 61 at 12-13).  That is certainly not the case. Indeed:

> Many courts around the country have considered whether to conditionally certify a class for a collective action where exotic dancers such as the proposed Plaintiffs here have made similar FLSA claims against the owners of [the] establishment where they worked. See *Guzman v. Three Amigos SJL, Inc.,* 117 F. Supp. 3d 516, 2015 WL 4597427 (S.D.N.Y. July 30, 2015); *Geter v. Galardi South Enterprises, Inc.,* 2015 WL 2384068 (S.D. Fla. May 19, 2015); *Romero v. ABCZ Corp.,* 2015 WL 2069870 (S.D.N.Y. April 28, 2015); *Jane Roes 1–2 v. SFBSC Management, LLC,* 77 F. Supp. 3d 990 (N.D. Cal. 2015); *Kesley v. Entertainment USA, Inc.,* 67 F. Supp. 3d 1061 (D. Ariz. 2014); *Dittus v. KEG, Inc.,* 2014 WL 6749183 (D.S.C. Dec. 1, 2014); *Coronado v. D.N.W. Houston, Inc.,* 2014 WL 6674292 (S.D. Tex. Nov. 24, 2014); *Espinoza v. Galardi South Enterprises, Inc.,* 2014 WL 5410307 (S.D. Fla. Oct. 23, 2014); *McFeeley v. Jackson Street Entertainment, LLC,* 47 F. Supp. 3d 260 (D. Md. 2014); *Cox v. Entertainment USA of Cleveland, Inc.,* 2014 WL 4302535 (N.D. Ohio Aug. 29, 2014); *Carter v. Doll House II, Inc.,* 69 F. Supp. 3d 1351 (N.D. Ga. 2014); *Verma v. 3001 Castor, Inc.,* 2014 WL 2957453 (E.D. Pa. June 30, 2014); *Stevenson v. Great American Dream, Inc.,* 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013); *Hughes v. Burie,* 2014 WL 1572543 (N.D. Fla. April 18, 2014); *Hart v. Rick's Cabaret International, Inc.,* 967 F. Supp. 2d 901 (S.D.N.Y. 2013); *Cruthis v. Vision's,* 2013 WL 4028523 (E.D. Ark. Aug. 7, 2013); *Calder v. GGC–Baltimore, LLC,* 2013 WL 3441178 (D. Md. July 8, 2013); *Collins v. Barney's Barn, Inc.,* 2013 WL 1668984 (E.D. Ark. April 17, 2013); *Watson v. W.W.D., Inc.,* 2013 WL 1947365 (W.D. La. March 25, 2013); *Jones v. JGC Dallas LLC,* 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012); *Nesselrodte v. Underground Casino & Lounge, LLC,* 2012 WL 4378163 (N.D. W.Va. Sept. 25, 2012); *Ruffin v. Entertainment of the Eastern Panhandle,* 2012 WL 761659 (N.D. W.Va. March 7, 2012); *D'Antuono v. C & G of Groton, Inc.,* 2011 WL 5878045 (D. Conn. Nov. 23, 2011); *Clincy v. Galardi South Enterprises, Inc.,* 808 F. Supp. 2d 1326 (N.D. Ga. 2011); *Thompson v. Linda And A, Inc.,* 779 F. Supp. 2d 139 (D.D.C. 2011);

*Green v. Plantation of Louisiana, LLC,* 2010 WL 5256354 (W.D. La. Nov. 24, 2010); *In re Penthouse Executive Club Compensation Litigation,* 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010).  **Of these many cases, only two declined to conditionally certify a class.**

*Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 781 (C.D. Ill. 2015) (emphasis supplied); *see also Miller*, 2018 WL 305819, at *3 (granting motion for conditional certification of a class of "all exotic dancers who worked at Jimmy's Lounge during the relevant three year period").

Defendants also argue that Plaintiffs have failed to produce sufficient evidence that there are other potential class members who desire to opt in. (Doc. 58 at 6-11).  Plaintiffs have countered by submitting with their reply the consent of a putative class member to become a party plaintiff in this action. (Doc. 61-9).

"The number of plaintiffs necessary to demonstrate a desire to opt in is not many, sometimes as few as two, three, or four." *Lemming v. Sec. Forces, Inc.*, 2010 WL 5058532, at *1 (M.D. Fla. 2010).  "Even a single affidavit or consent to join submitted by another individual stating that they are similarly situated and wish to join the suit is enough to bring the Plaintiff's contentions above pure speculation." *Brooks v. A. Rainaldi Plumbing, Inc.*, 2006 WL 3544737, at *2 (M.D. Fla. 2006); *see also Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1283 (S.D. Fla. 2012) ("the existence of just one other co-worker who desires to join in is sufficient to rais[e] the Plaintiff's contention beyond one of pure speculation" (citation and internal quotation marks omitted)); *Miller*, 2018

20

WL 305819, at *3 (plaintiff's submission of an affidavit of a putative class member who stated that she would opt in if given the opportunity satisfied plaintiff's "lenient burden" to demonstrate that others desired to opt in).  Here, three Plaintiffs—Coleman, Miller, and Williams—have joined this action since it was originally filed, and a fifth putative class member has consented to join in.[9] This satisfies Plaintiffs' "lenient burden" to demonstrate that there are other potential class members who desire to opt in.

Accordingly, Plaintiffs' motion for conditional certification of a class of all exotic dancers who worked at Visions and Showcase during the relevant periods is due to be granted.

### 2.    Notice

As for notice to potential class members, Plaintiffs have submitted a Proposed Notice (doc. 55-11) that they would like to have disseminated by mail, email, and attachment to text message.  The Proposed Notice is directed to "[a]ll persons who worked as exotic dancers at VGC, Incorporated, d/b/a Visions Gentlemen's Club and/or GBC, Inc., d/b/a Showcase Gentlemen's Club" during the relevant periods. (*Id.*)  Plaintiffs have requested that Defendants be required to provide the names, addresses, email addresses, and telephone numbers of potential

---

[9] The court notes again that one of the original plaintiffs, Krystal McCray, has dropped out of the lawsuit.

class members to Plaintiffs' counsel within fourteen days of the entry of an order

approving their motion for conditional certification.[10] (Doc. 54 at 6).

Defendants have raised numerous objections to Plaintiffs' Proposed Notice

and their requested means for disseminating the notice.  (Doc. 58 at 15-27).

Defendants object to including dancers for VGC and GBC in one class, and assert

that the Proposed Notice should list two separate subclasses, one for dancers who

performed at Visions and another for dancers who performed at Showcase. (*Id.* at

16).  They object to the scope of the contact information Plaintiffs have requested

and to Plaintiffs' request that they provide the information within fourteen days

from the date of any order of conditional certification. (*Id.* at 18-20).  Defendants

assert that they "may possess sparse documents containing some of the requested

information as to some class members, but it would be a difficult, time-consuming

process to attempt to assemble the available information from what sparse and

limited records [they do] have." (*Id.* at 19).  Defendants insist that "any required

disclosures of contact information for putative class members by Defendants

should be limited to putative class members' names and addresses" and that

notices to potential class members should be mailed to their home addresses in

plain envelopes. (*Id.* at 23 & 28).  Defendants further argue that the language of the

Proposed Notice is "underinclusive" because it fails to notify potential opt-in

---

[10]Plaintiffs initially requested that Defendants also provide the social security numbers of
potential class members, but they have since withdrawn that request. (*See* Doc. 61 at 23).

plaintiffs that they may be liable for Defendants' costs of suit if Plaintiffs do not prevail in the lawsuit. (*Id.* at 24). They also contend that the Proposed Notice fails to properly inform the potential plaintiffs of the issues in the case. (*Id.* at 25).

In light of Defendants' strong objections to Plaintiffs' Proposed Notice and to Plaintiffs' proposed means for disseminating the notice, the court will defer ruling on Plaintiffs' Proposed Notice at this time. Instead, the court will order the parties to meet and confer in an effort to resolve their differences. Should the parties fail to reach agreement on a revised Proposed Notice and the means for disseminating the notice, the court will schedule a hearing on the matter.

## CONCLUSION

For the foregoing reasons, VGC's motion for summary judgment (doc. 63) is **DENIED** and Plaintiffs' motion to strike the affidavits of Carolyn Bracken and Lee Faulkner (doc. 69) is **DENIED** as moot. Plaintiffs' amended motion for conditional certification (doc. 54) is **GRANTED** to the extent that Plaintiffs have moved the court to conditionally certify this case as a collective action. The court defers ruling on Plaintiffs' request for approval of their Proposed Notice to potential class members.

The parties are **ORDERED** to meet and confer within fourteen days of the date of this order and to engage in good faith efforts to resolve their differences regarding Plaintiffs' Proposed Notice and the means for disseminating the notice.

If the parties reach agreement on a revised Proposed Notice and the means for disseminating the notice, they shall so advise the court and shall submit the revised Proposed Notice to the court within seven days following their meeting.  If the parties are unable to resolve their differences, they shall each submit a proposed notice for the court's consideration within seven days following their meeting.  The court will then schedule a hearing to address the parties' areas of disagreement.

DONE, this the 14th day of May, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge